Rathbone *v.* Stocking.

---

---

SAME TERM.　*Before the same Justices.*

## RATHBONE *vs.* STOCKING.

Where a judgment is confessed to several persons, to secure an actual indebtedness of the defendant to the plaintiffs therein, the presumption—in the absence of evidence to the contrary, or proof of circumstances to rebut that presumption—is, that the plaintiffs are equally interested in the amount to be collected upon the judgment. And each plaintiff, without further proof, will be entitled to demand of either of his co-plaintiffs who receives the whole amount of the moneys collected, his aliquot portion thereof.

But this presumption is liable to be rebutted, either by positive proof, or by circumstances from which different interests in the several plaintiffs may be inferred.

Such evidence is proper, and competent, and does not infringe upon the rule which prevents the giving of parol evidence to vary or contradict a record, or a written instrument. For, it in no way affects the bond upon which the judgment was given, or the judgment itself; but it operates upon and affects the rights of those claiming the fruits of the judgment after that, and the bond, have performed their respective offices, and are, in a measure, *functus officio.*

Where a judgment is confessed to several persons, to secure them for their separate liabilities as sureties for the debtor, in respect to different debts, there is no legal presumption that the liabilities of the sureties are equal in amount.

Nor can the plaintiffs in such a judgment, without further proof, after the consideration and purposes of the judgment have been established, be adjudged to be equally interested in the amount to be raised thereby. They will not be presumed to be thus equally interested, without the further presumption, or proof, that their respective liabilities were equal.

In such a case, the rule of distribution is, the equitable rule of equality; each surety sharing *pari passu* in ratable proportion according to the amount of his liability.

And the interest which the several plaintiffs in the judgment have therein, is to have the fund raised by an execution issued thereon, applied in payment of the several demands on which they are respectively liable, ratably, in proportion to their respective liabilities.

Rathbone *v.* Stocking.

Where several parties are interested in a trust fund, in unequal proportions, no action at law will lie by either party, for his share, until a distribution has been made, and the proportion of each, and his right thereto, settled and ascertained.

The action for money had and received takes the place of a bill in equity, and should be encouraged, within proper limits. But it should not be extended to cases in which the defendant may be deprived of any right, or subjected to any inconvenience thereby.

In an action for money had and received the plaintiff can only recover as he would upon a bill in equity; and if, for any reason, a court of law cannot apply the same principles, in the statement of an account between the parties therein, which a court of equity would apply, and secure to each party his rights, as effectually as a court of equity could, the action will not lie.

Nor will the action lie where the question as to the liability of the defendant to pay the sum claimed by the plaintiff, depends upon, and is involved with, a complex account between the parties and others, which can only be properly taken and finally adjusted, in a manner to conclude all parties, in a court of equity.

THIS was an action for money had and received, and was heard before referees. On the hearing it was proved that in August, 1846, a judgment was confessed, upon a bond and warrant of attorney, by David Hunt, to the plaintiff and defendant in this cause and three other persons, to secure them for endorsements and other liabilities separately incurred by them for the judgment debtor. The bond was in the penal sum of $20,000, conditioned for the payment of $15,000 on demand. Afterwards the judgment debtor made a general assignment of his property for the benefit of creditors, to two of the plaintiffs in the judgment, in which the assignees were preferred; the assignment containing a clause therein which it was contended subjected the assigned property to levy and sale on an execution upon the confessed judgment. After the execution of the assignment, the defendant in this suit sued out an execution upon the judgment, and sold the assigned property, to the amount of over $14,000, of which about $11,400 was paid to the assignees of the judgment debtor by the consent of the defendant in this suit; they agreeing, at the same time, to pay up and satisfy an equal amount of the debts of the assignor in which the defendant was liable as first endorser. The balance of the amount realized upon the execution was paid to another of the plaintiffs in the judgment, and is not in controversy in

Rathbone *v.* Stocking.

this suit. The assignees paid notes and bills of the assignor and judgment debtor, in pursuance of the agreement with the defendant, upon which the defendant was liable as first endorser, to the amount of $11,950; and upon all the notes and bills thus paid one or the other of the assignees, (who were also plaintiffs in the judgment,) was liable as endorser subsequent to the defendant in this suit. The assignees forbade the sale upon the execution, and had, at the time of the arrangement between them and the defendant, commenced an action in this court against the sheriff and the defendant, to recover the value of the property sold.

There was no evidence of the amount of the liabilities of the plaintiff or defendant, or the other plaintiffs in the judgment, for David Hunt, and which liabilities were intended to be secured by the judgment. The referees reported in favor of the plaintiff for one-fifth of the amount paid to the assignees by direction of the defendant in this suit, viz. $2392,25; and the defendant now moves to set aside the report, on a case.

*J. A. Spencer & F. Kernan,* for the defendant.

*C. P. Kirkland,* for the plaintiff.

*By the Court,* ALLEN, J. The first question that presents itself in this case is, whether the plaintiff can maintain an action at law to recover any part of the money received by the defendant. And the decision of this question involves an inquiry into the rights of the several plaintiffs in the judgment, as between themselves, and the relations which they bear to each other and to the defendant in the judgment, and to the holders of the several promissory notes and bills of exchange endorsed by the plaintiffs thereon respectively as sureties for the defendant, and to secure and indemnify against which the judgment was confessed, and the character of the fund represented by the judgment, or created by reason of the process issued thereon.

If the judgment had been confessed to secure an actual in-

VOL. II.                18

Rathbone *v.* Stocking.

debtedness of the defendant to the plaintiffs, the presumption would have been, without evidence to the contrary, or proof of circumstances to rebut that presumption, that the plaintiffs were equally interested in the amount to be collected upon it, and each plaintiff, without further proof, would have been entitled to demand of either of his co-plaintiffs who should receive the full amount of the moneys collected, his aliquot portion thereof. (*Collyer on Part.* 84. 2 *Gal. Rep.* 303. *Gould* v. *Gould,* 6 *Wend. Rep.* 267, *per the Chancellor.* *See also, per Parker, J. Gilman* v. *Brown,* 14 *Mass. Rep.* 128.) But this presumption is liable to be rebutted, either by positive proof, or by circumstances from which different interests in the several plaintiffs may be inferred. (*Matthews on Pres. Ev.* 77, *and authorities cited above.*)

And this evidence is proper and competent, and does not infringe at all upon the rule which prevents the giving of parol evidence to vary or contradict a record or a written instrument. (*Per Lord Ellenborough,* 1 *Stark. Rep.* 267.) The evidence in no way affects the bond upon which the judgment was given, or the judgment itself; but it operates upon and affects the rights of those claiming the fruits of the judgment after that and the bond have performed their respective offices, and are in a measure *functus officio.*

The proof is consistent with the bond and judgment, and merely expletory. (*Bainbridge* v. *Statham,* 7 *Dow. & Ryl.* 141. *Tull* v. *Parlett,* 1 *Mood. & Malk. Rep.* 472. *Lamb* v. *Newbiggin,* 1 *Carr. & Kirwan,* 549.) But whether proof of the consideration of the judgment, and the purpose for which it was given, was or was not competent, with a view to affect and control the rights of the plaintiffs therein as between themselves, is not material, as the evidence was given without objection, and in part by the plaintiff himself.

The next inquiry is whether the facts proved rebutted the legal presumptions which arose upon the proof of the judgment in favor of the five plaintiffs. Those presumptions were, 1st. That the judgment was given for *a debt* actually due to all the plaintiffs; and 2d. That they were *equally interested* in that

debt. It was proved that the bond and warrant of attorney were *not* given to secure *a debt due* to the five jointly, or debts due to them severally. This expressly negatives the first legal inference growing out of the fact that the bond and warrant of attorney were given to the five plaintiffs jointly.

The agreement between the defendants and Crafts and Livingston, given in evidence by the plaintiff as a part of his case, recites the judgment as having been given "*for the purpose of indemnity, as endorsers, and sureties, &c.*" The assignment of David Hunt, the defendant in the judgment, refers to and provides for the judgment as given by way of indemnity against liabilities, by providing indemnities for a like purpose, *in aid of the judgment,* and to make up any deficiency that might remain after crediting the amount that might be realized on the judgment. And the plaintiff is compelled to resort to, and rely upon, that clause of the assignment, for the purpose of establishing the facts that the money secured by the defendant was realized by the sale of property legally subject to the execution, and that the transaction between the defendant and Crafts and Livingston, was not a legal accounting by the defendant for goods which he had wrongfully taken, and for taking which he was a trespasser. W. Crafts, one of the plaintiffs, and the attorney, who also took the bond and warrant of attorney, and by whom the judgment was perfected, testified that the bond and warrant of attorney "were given to the plaintiffs *therein to secure them for endorsements and other liabilities separately* incurred for the accommodation of David Hunt. They were given for security for *endorsements, and not for any other debts.*" The bond was in the penalty of $20,000, conditioned to pay $15,000. The evidence shows that the defendant, at the time they were given, as one of the firm of Stocking & Hunt, (two of the five plaintiffs,) was the accommodation endorser of David Hunt, on notes and drafts in which he, with his partner was first endorser, to the amount of $11,950, which had at the time been paid, and as is contended by the plaintiff, from the funds realized upon the execution issued on the judgment in question.

Rathbone *v.* Stocking.

There was no evidence tending to show that this was *the extent* of the liabilities of the defendant for David Hunt, intended to be secured by the judgment. For $8,500 of this amount Mr. Crafts, one other of the five plaintiffs, was liable as endorser *separately*, and second to the defendant for the residue. Mr. Livingston, another of the five plaintiffs, was liable, in like manner, *separately* and second to the defendant; and there is no evidence that Crafts and Livingston were endorsers on any other paper for Hunt, or liable as his sureties in any other instance. The judgment was intended to indemnify, as well Messrs. Crafts and Livingston, as the defendants, against those several liabilities. So that the evidence shows, as a matter of fact, as between the defendant and his partner, and Crafts and Livingston, four of the five plaintiffs, any thing but an equality in the amount of liabilities which formed the consideration of the judgment, and thus rebuts any presumption which might otherwise arise from the situation of the parties as joint plaintiffs in the judgment. But does the rule which implies an equal interest in partners in the partnership funds, and in several creditors in an existing debt, secured to them by one bond, or endorsed by one instrument, apply to the case before us? We think not. The reason of the legal inference in the cases mentioned is, that in the absence of *all proof*, each party is supposed to have contributed an equal amount to the capital of the copartnership; or the fund which is the basis of the obligation; and, that if they have not, the proof of the fact is alike accessible to all, and will be produced. But in the case of *separate* liabilities of different sureties for different debts of the same principal, it appears to us that there is no probability, still less a legal presumption, that the liabilities of all are equal. It certainly could not be inferred merely from the facts that each one of several persons are all accommodation endorsers, of different notes to different persons, for the same maker. We might as well infer, as matter of law, that all the debts of an insolvent provided for by an assignment, were equal in amount. And we do not see how the inference can arise merely from the fact that the sureties chance, on the eve

Rathbone *v.* Stocking.

of the failure of the principal, to take security jointly against the several and "separate" endorsements. Had the security been taken in *anticipation of becoming* endorsers, there would be some plausibility in contending that an *equal*, though perhaps *several* responsibility, was contemplated. In the case before us, if the security, instead of having been given directly to the persons intended to be indemnified, had been given either in the form of a judgment, or otherwise, to some third person, as trustee, for the same purpose, that is, to indemnify these five plaintiffs against their separate endorsements, it would hardly be contended, we think, that the mere fact that they chanced to be provided for by the same instrument, and in the same connexion, furnished any evidence whatever, of the amounts of their respective liabilities. The most that could be claimed would be, that they were entitled to share ratably in the provision made for their indemnity. No one would claim that each of the persons provided for could call upon the trustees for an aliquot portion of the trust fund, as the same should be realized. And yet the design and intent of the judgment in this case was the same as if the judgment had been given to a third person as trustee. And why should not its legal effect be the same, the consideration and object being shown? We are of the opinion that the plaintiffs in the judgment could not, as matter of law, without farther proof, after the consideration and purposes of the judgment had been established, be adjudged to be equally interested in the amount to be raised. They certainly could not be presumed to be thus equally interested, without the farther presumption, or proof, that their respective liabilities were equal. For, in a provision like this, the rule of distribution would be the equitable rule of equality; each surety sharing *pari passu*, in ratable proportion, according to the amount of his liability. (*Riggs* v. *Murray*, 2 *John. Ch. Rep.* 576. *Dering* v. *Earl of Winchelsea*, 1 *Coxe's Ch. Cas.* 318. *S. C.* 2 *Bos. & Pull.* 270. *Ewer* v. *Hobb*, 5 *Met.* 1. *Root* v. *Bancroft*, 10 *Id.* 44.) And if the presumption contended for could arise in any case, it seems to us that it is entirely repelled in this case by the proof that

the defendant was liable as first endorser for twelve of fifteen thousand dollars provided for by this judgment; and that Crafts and Livingston, two others of the plaintiffs, were liable as second endorsers for the same debts, in unequal amounts. Crafts and Livingston are entitled to the benefit of the same presumption, (if such presumption legally exists,) that is claimed by the plaintiffs, and could, with the same propriety, bring this action for their equal fifth part of the amounts received by Stocking.    The fact not only *may* be, but probably *is*, that the defendant is the first endorser in every instance in which the plaintiff is the surety of Hunt, as he was in cases where Crafts and Livingston had endorsed.    And if so, all that the plaintiffs can claim is, that the defendant shall faithfully apply a due proportion of the moneys realized upon the judgment, to the satisfaction of those liabilities upon which he is, or may be made, responsible.    He has no more right to ask the defendant to pay the money to him than the defendant would have to make the same request of him, the plaintiff.    And if the fact *may* be so, consistent with the probabilities and with our every day experience, why should we apply a presumption never applied in such a case, and so inconsistent with the facts proved, so far as the proof goes ?    Indeed, upon the argument this presumption was sought to be engrafted upon this case, only by calling the judgment a joint debt, and insisting that if there were any equities between the parties which would change their rights, they were not inquirable into at law.    But there *was* no *joint debt* to the plaintiffs, and there is no necessity for calling things by wrong names, when the only effect will be to do injustice.

What then was the interest of the several plaintiffs in the judgment?    The judgment was given, not to secure the payment of a single debt as to either or any of the plaintiffs, unless they should first be called upon, and should pay upon their liabilities, but to secure and indemnify them against their liabilities for the judgment debt.    In other words, the judgment was given to create or raise a fund to indemnify the plaintiffs therein against certain liabilities.    This indemnity would only be per-

Rathbone *v.* Stocking.

fectly effectual by the payment of the demands upon which these parties were liable ; and that being done, the plaintiffs in the judgment would have no occasion for, or right to, the funds. The interest which the several plaintiffs in the judgment had in the same, was, therefore, to have the fund, when raised, applied in payment of the several demands upon which they were respectively liable *ratably* in proportion to their respective liabilities. This was the extent of the interest of the plaintiffs. (*Bank of Auburn* v. *Throop*, 18 *John. Rep.* 504.) It is true the plaintiffs in the judgment had the right to control the judgment, and collect the money ; and the creditors of Hunt, who held the endorsed notes, had no *legal* interest in it. (*D' Wolf* v. *Chapin*, 4 *Pick.* 59.) Still they could only control the judgment for their own indemnity, and the creditors could compel the proper application of the funds. And in a proper case the sheriff could have been compelled to appropriate the moneys made upon the execution directly to the payment of the debts endorsed by the parties to the judgment. (*Bank of Auburn* v. *Throop, supra.*) It cannot be doubted that in case of danger of loss, equity would, either upon the application of Hunt, the debtor, or of the creditors, prevent the money raised upon the judgment from going into the hands of the plaintiffs, and apply it directly to the payment of the debts intended to be secured. (*Wright* v. *Morley*, 11 *Ves.* 22. *Capel* v. *Butler*, 2 *Sim. & Stu.* 457.) The plaintiffs were their *quasi* trustees, for the benefit of the creditors of Hunt, holding by their endorsed papers as well for Hunt, the debtor, as for themselves. The judgment was the means of raising and representing the funds which they were to distribute. Implied trusts arise, in general, by combination of law upon the acts or situation of the parties. (1 *Mad. Ch.* 446.) After a dissolution of a copartnership, each partner becomes a trustee for the others, as to the partnership funds in his hands, in order to effect a fair settlement and just distribution of the effects. (*Allison* v. *Davidson*, 2 *Dev. Eq. Rep.* 79.) And it appears to us that in this case each plaintiff in the judgment became a trustee for the others to effect a just distribution of the funds,

Rathbone *v.* Stocking.

in discharge of the liabilities intended to be provided for ratably, not to divide them share and share alike, irrespective of the liabilities. Indeed division among the plaintiffs, in any proportions, never was contemplated ; but indemnity by distribution in payment of the debts was designed. Either plaintiff might have received the whole amount of the judgment, (2 *Kent's Com.* 403, 4,) but that would merely make him the trustee for the benefit of the whole. Would this judgment pass by a devise, or a general assignment of the plaintiffs? And would the money realized upon it, or the notes taken instead of money, be reached by a creditor's bill as the property of the plaintiffs? We think not ; and yet if not trust funds they could. If, in the receipt of the whole, the party receiving the notes and money, instead of holding them as trustee for the others and other persons interested, become the *debtor* to the other plaintiff for their respective amounts, then they are, for all purposes, the money and choses in action of the party receiving them. If Hunt, instead of giving the judgment, had assigned to the five persons named as plaintiffs in the judgment, property to be sold by them and applied to indemnify them against their several endorsements, and one had taken charge of the property for the purpose of accomplishing this object, can there be any doubt that the funds raised would be a *trust fund*, and the party receiving it a trustee? And does it make any difference whether a debtor assigns his property directly in trust, and expressed as a trust for the benefit of his creditors, or provides for a sale of the property upon execution, to accomplish the same object? In either case we think that each creditor having in his possession property or funds assigned or realized upon the sale, would be a trustee for the others. If the plaintiffs in this suit should succeed, and recover of the defendant just the proportion which his liabilities bear to the whole amount secured, would their funds, while remaining in specie, go to his executors as assets, or would they go charged with the trust for the payment of the debts of Hunt for which the plaintiff is liable? We think, so long as they could be had, so long the creditors of Hunt, or Hunt himself, would have the right to follow them, and insist

Rathbone v. Stocking.

upon their proper application. If these parties were, as to the judgment and the funds raised by its means, trustees, and the funds in their hands, or in the hands of either of them, trust funds, then no action at law will lie until a distribution has been made, and the proportion of each, and his right thereto, settled and ascertained. (*Peck* v. *Randall*, 1 *John. Rep.* 165. 1 *Stark. Rep.* 372.) In *Roper* v. *Holland*, (3 *Ad. & Ellis*, 99,) and in *Weston* v. *Barker*, (12 *John. Rep.* 276,) the principle is recognized and sanctioned, and the decisions put upon the ground that the amount due the cestui que trust had been ascertained, and the trustee had expressly promised to pay. Certainly an action at law will not lie by one trustee against another for the custody of the trust funds. But considering that there is no trust, and that there is nothing in the character of the plaintiff and defendant, in their relations to the funds, to prevent the one suing the other at law in respect to the fund, still we are of the opinion that this action cannot be maintained. The action for money had and received (which is this action) is an equitable action, and will lie whenever the defendant has received money belonging to the plaintiff, which, according to natural equity and justice, he ought to refund or pay over. (*Wiseman* v. *Lyman*, 7 *Mass. Rep.* 286. *Wright* v. *Butler*, 6 *Wend.* 290. *Eddy* v. *Smith*, 13 *Id.* 488.) It takes the place of a bill in equity, and should be encouraged within proper limits. It should not be extended, however, to cases in which the defendant may be deprived of any right, or subjected to any inconvenience thereby. (*Towsey* v. *Preston*, 1 *Conn. Rep.* 175.) It is very evident that in this action at law the rights of the defendant cannot be properly protected. In the discussion of this branch of the case, we assume that the distribution, among the several plaintiffs in the judgment, should be ratable, in proportion to their respective liabilities, and that the fact that they are named jointly as plaintiffs, furnishes no evidence whatever of the amounts of their respective liabilities. It follows, then, that the defendant cannot safely account with, and pay over to one, without knowing the extent of the liabilities of each and all; and in order to make an accounting safe

to the defendant, all the parties interested should unite, if the accounting is amicable and voluntary, or be parties to the litigation if it is adverse.

At law there is no provision for making the other persons in interest, parties to this suit; and the judgment in this suit would not be binding upon them, and the payment of it would not estop them from showing that the plaintiff in this suit is not in fact liable for a dollar, and that his liabilities bear but a small proportion to those of the others. And shall a court of law assume to perform the duties of a court of equity, when they have so little power to do final justice between the parties? The plaintiff's counsel contended that if the rights of the parties were *unequal*, if the judgment was not a *joint* debt, and if the judgment was given to secure separate liabilities of the plaintiff for unequal amounts, still the plaintiff was entitled to recover one equal fifth part in this action, and the defendant must resort to equity to ascertain the proportions due to each; and that these proportions could not be ascertained in a court of law. That is, that the plaintiff might recover at law, and the defendant sue for and recover back the same amount, or a part of it, in equity; that the plaintiffs might go to law on one side of the court and the defendants on the other, in respect to the same claim. That will not answer. When he conceded that the defendant might, consistently with the case made by him, have equities which this court, as a court of law, could not secure to him in this action, in the statement of the account, he conceded away his right of action. | In this action the plaintiff can only recover as he would upon a bill in equity; and if for any reason this court, as a court of law, cannot apply the same principles in the statement of this account, which a court of equity would apply, and secure to each party his rights as effectually as a court of equity could, the action will not lie. In this action the plaintiff can only recover what remains after deducting all just allowances. (4 *Burr.* 2133.)

The charge and defence in this action are both governed by the true equity and conscience of the case. (*Per Lord Mansfield, Longchamp* v. *Kenney,* 1 *Doug.* 138.) It is the most

favorable way in which he can be sued.   He can be liable no
further than the money he has received, and against that he
may go into every equitable defence, upon the general issue.
He may claim every equitable allowance, &c., in short, he may
defend himself by every thing which shows that the plaintiff
*ex æquo et bono* is not entitled to the whole of his demand, or
any part of it.   (*Per Lord Mansfield, Moses* v. *McFerlan,* 2
*Burr.* 1010, *cited and approved,* 13 *Wend.* 490.)

The plaintiff must show that he could recover in a court of
equity.  (2 *T. R.* 370.   *Cowp.* 793.)  But in this case the
plaintiff insists upon this right to recover, while he concedes,
or if not conceded, it cannot be denied, that the right of the
parties cannot be finally adjusted in a manner to conclude all
parties interested, without a resort to a court of equity.

Again ; the accounts to be stated between the parties are
complete in their character, and such as can better and more
conveniently be investigated and settled in a court of equity ;
and for that reason a court of law should not exercise jurisdic-
tion.  (*Carlisle* v. *Wilson,* 13 *Ves.* 276.)

Mutual dealings and demands between parties which are too
complex to be accurately taken by trial at law, may properly
be adjusted in equity.  (1 *Sch. & Lef.* 309.)  It is on account
of the difficulty of doing justice between the parties in the set-
tlement of their accounts by reason of the peculiar manner in
which courts of common law exercise their jurisdiction, that
they have been held incompetent to take jurisdiction of part-
nership dealings, and not because the parties stand in the rela-
tion of partners to each other.  For courts of law will entertain
jurisdiction of certain actions between partners, and even in
relation to their partnership dealings, when but *one item* re-
mains unadjusted.  (*Per Lord Ellenborough, Robson* v. *Cur-
tis,* 1 *Stark. Rep.* 63.   *Westerlo* v. *Evertson,* 1 *Wend.* 532.
*Murray* v. *Bogert,* 14 *John. Rep.* 318.)

When matters, though cognizable at law, are involved with
a complex account which cannot conveniently, if at all, be
taken at law, yet until the result of the account be ascertained
the justice of the case cannot appear, courts of equity constantly

Rathbone v. Stocking.

take cognizance of such matters. (*O'Connor* v. *Spaight*, 1 *Sch. & Lef.* 309. *Weymouth* v. *Boyer*, 1 *Ves. jun.* 416.) And in this case the question whether the defendant has received money of the plaintiffs which, in equity and good conscience, he ought not to retain but should pay to the plaintiff, is involved with a complex account of the several endorsements made by the five plaintiffs in the judgment, the amount of their respective present and contingent liabilities, and involving perhaps an inquiry into the mutual dealings between David Hunt and the several parties, with a view to ascertain the mutual equities between them, and also an inquiry as to any other securities which they may have received, and which are in the first place properly applicable to the discharge of their respective liabilities. (*Theobald, Prin. and Surety, ch.* 11, § 283. See also *Williams* v. *Rogers*, 5 *John. Rep.* 163; *Root* v. *Bancroft*, 10 *Met.* 44.) We think that for this reason this action will not lie, but that the plaintiff must resort to equity. But admitting that an action at law could be maintained, was it not for the plaintiff to show the amount to which he was entitled, by proper evidence of the amount of the existing liabilities, and the amount of the liabilities of the others? We think it was; and that he held the affirmative not only to show his *right* to recover, but the *amount* to which he was entitled. It was for him to inform the conscience of the court on both points. "*Ei incumbit probatio qui dicit non qui negat.*" (1 *Phil. Ev.* 194.) He did this presumptively, by showing the judgment and the receipt of the money by the defendant; but when the consideration and object of the judgment was shown, the onus was again thrown upon the plaintiff; as the onus may shift several times during the trial of a contested fact. (*Cowen & Hill's Notes to Phil. Ev.* 475, *note* 194. *Munroe* v. *Cooper*, 5 *Pick.* 412.) It was for the plaintiff to show the *amount* which, *ex aequo et bono*, he was entitled to receive. (4 *Burr.* 2133. *Doug.* 138. 7 *Mass. Rep.* 286. 13 *Wend. Rep.* 490.)

The report must be set aside and a new trial granted, costs to abide the event.