### JOHN T. MEEKS v. M. H. WHATLEY.

1. TAX DEEDS—PRESUMPTIONS OF THEIR VALIDITY.—A tax deed imports, *prima facie*, that the antecedent things, required by law of the assessor and collector of taxes, have been done as required. Consequently, he who assails or denies the validity of a tax deed must set up and prove any vitiating matter relied on to defeat it.

2. BANKRUPTCY—PRESUMPTION.—When incumbered property is sold by an assignee in bankruptcy, it will be presumed to have been sold subject to the incumbrance. A sale by the assignee, whether under judicial order or not, does not affect the lien of the state for taxes, unless, in case of sale under judicial order, the revenue officer, or other proper representative of the state, were made a party to such order.

3. CONFIRMATION OF TAX TITLES UNDER ACT OF 1860.—A mortgagee, out of possession, the holder of a mechanics' lien, or the purchaser at a bankrupt sale, has in any event such an "interest or claim," whether valid or not, as entitles him to controvert the confirmation of tax titles under the act of 1860.

APPEAL from the Chancery Court of Jasper County. DRANE, Chancellor.

The bill in this cause was filed in the chancery court of Jasper county by complainant to perfect a tax title to the W. $\frac{1}{2}$ of S. E. $\frac{1}{4}$, and S. W. $\frac{1}{4}$ of N. E. $\frac{1}{4}$, section 25, T. 3, R. 11 E., for which he paid at tax sale, on the 9th of October, 1869, the sum of $5.64, and received a deed from R. Meeks, sheriff and tax collector of said county; this deed is exhibit A to bill.

The bill states that the land was assessed and sold as the property of the said M. H. Whatley for taxes of 1868; that this land was sold by Jas. U. McCormick, assignee in bankruptcy of Whatley, on the 7th day of December, 1868, to the defendants, Hardy and Shannon, and who, complainants are advised, claim title to the same; that the defendants are the only persons interested in the land, and prays that they be made defendants to the bill.

The bill further states that complainant is advised and believes that Whatley had a good title to the land and that the same was properly and legally assessed to him and sold to complainant for the taxes of 1868; that more than two years have elapsed since

the purchase, and that the same had not been redeemed, and that he is advised and believes he has a good legal title to the same; that he files his bill under the provisions of an act to confirm tax titles; prays that Whatley, Hardy and Shannon be made parties defendants; that publication be made to all persons having or claiming any legal or equitable interest in the lands, returnable to the May term of the court; on the final hearing that complainant's title be confirmed and quieted to the land, and for general relief. The bill is sworn to.

The tax collector's deed is in the usual form for the W. $\frac{1}{2}$ of S. E. $\frac{1}{4}$ and S. W. $\frac{1}{4}$ of N. E. $\frac{1}{4}$, section 25, T. 3, R. 11 E. The consideration is $5.64. This deed is dated October, 9, 1869, and acknowledged on the 11th day of October 1869; recorded 27th December, 1872.

Subpœna issued January 27, 1872, to Whatley and Hardy, and returned duly executed, and to Shannon, January 23, 1872, and returned executed.

At the May term, 1872, the defendants demurred to the bill for the following special causes:

1. The bill shows that the lands were sold in bankruptcy, on the 7th day of December, 1868, and that the taxes were preferred under the bankrupt acts and that the tax collector had no legal right to sell.

2. It is not shown by the bill that the land was legally assessed by a qualified tax assessor, nor that Whatley was insolvent, or had no personal property out of which the taxes could be made.

3. It is not shown that Whatley had notice of the amount of taxes, nor of the non-payment, or that any demand was made, or that he had no personal property, or that the land was legally advertised, or that Robert Meeks was authorized to sell the land for taxes.

4. There is no equity on the face of the bill.

The demurrer was sustained, and the complainant allowed to amend his bill. At the August term, 1872,

the bill was dismissed, the complainant having failed to amend.

From these decrees the complainant appealed.

*Street & Chapman,* for appellant.

The court erred in sustaining demurrer to complainant's bill.

The bill was filed to confirm a tax title under section 1753 of Rev. Code, and is sufficient under that section. The statute uses the language, " heretofore or hereafter sold for taxes." And the statute, Code of 1871, sec. 700, after describing the form of the deed, uses this language: " And no such conveyance shall be invalidated in any court in this state, except by the proof that the taxes for which said land was sold had been paid before sale; and the tax collector's conveyance to individuals, and list of lands sold to the state shall be *prima facie* evidence that the assessment and sale, and all proceedings of sale were valid." The court is respectfully referred to those sections, and also sec. 1707. We, therefore, insist that the decree of the chancellor, in sustaining the demurrer to the bill, is error, and that the decree should be reversed.

*Hardy & Steele,* for appellees.

Taxes due the state were made a preferred debt by the act of congress establishing a " uniform system of bankruptcy;" and the tax collector should have proved his claim, and collected the taxes from the assignee. See Bankrupt Law of 1867, sec. 28.

The sale under which appellant claims must be governed by the laws then in force, and hence, complainant's bill should show affirmatively every fact necessary to constitute a valid tax sale under the law, as it then existed. This it does not do, and the demurrer was very properly sustained. See Blackwell

on Tax Titles, 39, 73; 3 East, 410; 6 Wheat. 119; 2 Ala. 253; 7 Wend. 148.

Simrall, J.:

The statute of 1860, under the provisions of which this bill was filed, makes the sales of tax collectors, thereafter had, valid to all intents, except for fraud or mistake in the assessment or sale, or unless the tax has been paid.

We have, heretofore, construed this statute as intending to impart to the sale and deed of this officer *prima facia* validity, conferring a title upon the purchaser, subject to be impeached and defeated for the causes above stated.

The deed to the purchaser imports *prima facie* that the antecedent things required by law to be done by the assessor and collector have been performed.

Vitiating matter must be averred and proved by the defendant. It is not incumbent on the complainant, who seeks to confirm and establish his title, to declare in his bill a compliance by these officers with all the directions of the revenue laws, antecedent to the sale.

To defeat the relief sought by complainant, the party contesting the confirmation of the title, must show the vitiating facts enumerated in the statute.

This case is like that of John T. Meeks v. F. Salter et al., just decided, except as it may be affected by the bankruptcy of M. M. Whatley, the owner of the land, and the sale of it by his assignee. The tax collector's sale was made on the 9th of October, 1869, for the taxes of the fiscal year 1868. The sale by the assignee to Hardy and Shannon was made the 9th of December, 1868. It is argued for the defendants, in support of their demurrer, that in these circumstances the sheriff could not make a valid sale for the taxes; his remedy for the collection being to prove his claim therefor, as a lien

or preference creditor in the bankrupt court. The 12th article, page 74, Code of 1857, makes the tax assessed upon the land a lien thereon after the 1st of May; and all taxes assessed shall be a lien upon all the property, real and personal, of the debtor, paramount to all other liens by judgment, execution, or any other incumbrance.

The bankrupt law makes no distinction between the different kinds of lien. If the law of the state recognizes a lien by judgment or in favor of a mechanic, or by mortgage, or in any other form, each is respected in the bankrupt court according to its dignity. Within the sense of the bankrupt act, and such is the general law, whenever the creditor has the legal right to have a debt satisfied from the proceeds of property, or before the property can be otherwise disposed of, it is a lien on such property for the security of the debt. 4 B. 5.

It seems there are several modes in which the assignee may deal with property incumbered with a lien. He may sell the property subject to the lien without an order of court for that purpose. Kelly v. Strange, 5 B. 2. In such sales, he transfers to the purchaser no better right than he had himself; the purchaser takes subject to such incumbrance. *In re* McLellan, 1 B. 91; Bump. on Bank. 161. The jurisdiction of the bankrupt court over the sales of property of the bankrupt is plenary, and large discretion is allowed. Bump. on Bank. 368.

Whether this sale was made by the assignee, with or without the order of the court, whether it was sold subject to the taxes of the year 1868, or not, is not shown in the bill. When the property is incumbered it will be taken for granted that the assignee sold subject to incumbrances. Kelly v. Strange, 3 B. 2.

Where the property is to any degree incumbered, the assignee is interested for the general creditors so far, and so far only, as there may be an excess in the

value of the property over and above the lien debt. In order that he may bring this surplus subject to control for the creditors at large, there is a jurisdiction in the bankrupt court, at his suit, to sell the entire estate and property, free, as it is called, of the incumbrance, the lien of the creditor being transferred to the fund in court realized by the sale of the property. *In re* Stewart, 1 B. 42. But ·where proceedings are taken in the bankrupt court to sell the property, notice must be given to the lien creditor. Foster v. Ames, 2 B. 147.

If such notice be not given, the rights of such creditor are not affected or concluded. The bill does not show that the title did not pass by the assignee's sale. If made without the order of the court, it was subject to the lien of the taxes; if made under judicial decree, it did not affect the lien unless the revenue officer, or some proper representative of the same, were made a party to that application.

The second section of the act of 1860 does not necessarily intend an inquiry into the validity of the contestant's title. All persons claiming, or having an interest, either legal or equitable, in the lands, must be notified. The fourth section contemplates a "right" in any person "claiming or having such interest," or "such other persons as may be interested therein," to appear and contest the confirmation and establishment of the tax title. A mortgagee out of possession, the holder of a mechanic's lien, would be entitled to contest with the complainant.

We think that the defendants, who derive title through the assignee, have such a "claim of legal title" as entitles them to controvert with the complainant, especially so, if in possession under the title. The words of the act are, "claiming" or "having" "an interest," which do not mean that the "interest" must be a perfect, equitable or legal title.

The complainant, as directed by the statute, dis-

closed the interest which Hardy and Shannon had. That claim was enough to give them the privilege to dispute the relief sought.

It was error to dismiss the bill. Decree reversed, and judgment here overruling the demurrer, and cause remanded with permission to defendants to answer in forty days from this date.