## A. PETERSON v. ANN E. KITTREDGE ET AL.

65   33<br>74  699

1. CHANCERY PRACTICE. *Setting aside pro confesso decree. Presumption of this court.*

Where, upon appeal from a Chancery Court, error is predicated on the action of the Chancellor in setting aside a decree *pro confesso*, this court will presume, in the absence of a bill of exceptions showing the grounds upon which such decree was vacated, that good cause was shown, and that the action of the Chancellor was correct. *Bryant* v. *Rosenbaum*, 62 Miss. 191, cited.

2. TAX TITLE. *Confirmation. Evidence. Practice.*

A complainant seeking, as against all persons, confirmation of a tax title, cannot avail of the defective title set up by a defendant, if he fail to show a good title in himself. *Meeks* v. *Whatley*, 48 Miss. 337, cited.

3. TAX SALE. *Excessive levy. Jail and bridge tax. Constitutional provision.*

A sale of land in 1876 for the taxes of 1875, under a levy for county purposes, which, including the taxes for jail and bridges, exceeded the limit fixed for such levy by an Act of the Legislature passed in 1875, is void. The taxes for jail and bridges, together with all the other county taxes not specially provided for, should have come within the restriction imposed by the act referred to, notwithstanding the provision of § 16, article 12, of the Constitution, that "no county shall be denied the right to raise, by special tax, money sufficient to pay for the building and repairing of court-houses, jails, and bridges, and other necessary conveniences for the people of the county." *Beck* v. *Allen*, 58 Miss. 143, cited. CAMPBELL, J., dissented.

4. SAME. *Effect of this court overruling former decisions. Constitutional Law.*

And the purchaser at such sale cannot defend his title by invoking decisions of this court in force at the time of the sale and of his purchase, and which, if still law, would protect his title, they having been since overruled. A sale for taxes is a proceeding in *invitum*, as to the owner of the land sold, and the purchaser does not acquire any contract rights which are shielded from subsequent legislative or judicial action by the constitutional provision against impairment of the obligations of a contract.

APPEAL from the Chancery Court of Leflore County.

Hon. R. W. WILLIAMSON, Chancellor.

A. Peterson exhibited his bill to the Chancery Court, praying that his title to a certain tract of land in Leflore County, acquired by him at a tax sale, be confirmed. Publication was duly made for all interested parties to appear and contest the complainant's right to the decree sought. No one having appeared on the day fixed for the appearance of defendants, a decree *pro confesso* was taken before the clerk at rules. At the following term of court Ann E. Kittredge and others, heirs of E. E. Kittredge, deceased, appeared and moved the court to set aside the decree *pro confesso*, which was accordingly done, and they admitted to defend. The record does not show upon what ground or what showing the motion was granted.

On the hearing of the case, it was shown that complainant bought the land in March, 1876, the same being sold for the taxes of 1875; that the levy of taxes in 1875, in Leflore County, was as follows : 33⅓ per cent. on the State tax for common county purposes ; 20 per cent. for contingent and school-house purposes ; 15 per cent. for pauper purposes ; 20 per cent. for Carroll County bonds ; 30 per cent. for judiciary ; also, 50 per cent. for erecting a jail, and 25 per cent. for repairing and building bridges.

The defendants offered in evidence (and it was admitted over complainant's objection), a deed from one Kelly, purporting to convey the land in question as a syndic under a Louisiana court to the ancestors of defendants.

The Chancellor held that the levy of taxes for 1875, in Leflore County, was excessive ; that the sale thereunder was void, and that complainant's tax deed was of no effect and a cloud on the title of the defendants, and decreed that it be cancelled.

The complainant, thereupon, appealed.

*J. M. Gibson,* for the appellant.

1. The first ground of error is that the court erred in setting aside the *pro confesso.*

No good reason or cause was shown for setting aside the *pro confesso ;* there was no affidavit or proof or cause set forth in the motion, nor for that matter was there ever, in the whole history of the cause,

any proof that the respondents had any right, legal or equitable, to interfere in the cause.

It has been held, and it is good practice, that a *pro confesso* properly obtained after due process (and due process was had in this case by publication made months before the day on which they were to answer), is a matter of right and one which the court shall not set aside unless for good cause, shown by affidavit or other sworn proof.

The motion to set aside was based upon no reason whatever. It recites none, and the record shows there was none offered with it to the court at the time. *Pittman* v. *McClellan*, 55 Miss. 299.

2. On the first hearing of the cause the court permitted the defendant to read in evidence, against objections of plaintiff, a deed from one Kelly to Dr. Edrington E. Kittredge. Kelly, as the deed recites, was acting in the capacity of a syndic under a proceeding of the Louisiana court, which had no jurisdiction of the land in Mississippi, and could not confer title.

There was no proof offered with it that E. E. Kittredge ever went into possession (and, in fact, he never did), and there was no proof offered that the defendants were the heirs of said Kittredge, and without this proof the deed, if otherwise competent, could not legally have been admitted in evidence, and having been admitted, furnished no proof of legal or equitable interest in the defendants to the land.

Hence the court had nothing to do on the bill, exhibit, and answer, but to grant the complainant the relief sought, since there was no proof before the court to entitle the defendants to any legal or equitable standing in the court, in whose behalf the court could deny the prayer of the complainant.

3. Did the court err in including in the calculation as to excessive levy the 20 per cent. for Carrol County bonds, the 50 per cent. for erecting jail, and the 25 per cent. for building bridges?

We know, as to the last of these propositions, we are brought somewhat face to face with the opinion of the court in the *Beek* v. *Allen* case, 58 Miss. A decision which many lawyers in this State regret as a seemingly unconscious legislation on the part of the then supreme judiciary tribunal of the State, and as an unnecessary infringement and whittling away of the Constitution.

But before proceeding further, we contend the decision of *Beck* v. *Allen* should not have a retroactive effect, and be held to impair a contract under a different law. And we say further, that the law at the time of the purchase of property should be the law governing the title. It is as consistent, and reasonable, and just, for us to claim the benefit of the law as laid down by the decision of the Supreme Court in force at the time of our purchase, as it is for the defendants to claim now that our title is to be governed by the Acts of 1876, under which the sale was made to the State, and not for the same to be governed by the Code of 1880.

At the time of our purchase the Supreme Court, in interpreting § 16, article 12, of the Constitution, in the case of the *Board of Supervisors* v. *Klein*, 51 Miss. 807, and in *Gamble* v. *Witty*, 55 Miss. 26, held that the Legislature could not restrict the board of supervisors of the State from levying taxes for building court-houses, and jails, and bridges.

Take out of our calculation the levy of the board of supervisors of Leflore County for 1875, the special levy for building a jail and building bridges, and for the special Carroll County bonds, and we find that, to wit: Jail, 50 per cent.; bridges, 25 per cent.; Carroll County bonds, 20 per cent., making a total of 95 per cent. to be taken out of the calculation.

It is unnecessary for us to add that the tax levied by the county of Leflore was then far from being in excess of the 20 mills on the dollar as estimated.

That was the law as laid down then in construing the Constitution, and under it we purchased our title, and under it our title vested and became complete, and it should not now be impaired by the decision in the *Beck* v. *Allen* case.

For this court to hold now that the extraordinary decision in *Beck* v. *Allen*, overruling the *Klein* v. *Board of Supervisors*, and *Gamble* v. *Witty* cases, should govern the title in controversy here, acquired when the latter cases expounded and expressed the law of the land, would be as unjust as to hold that the Code of 1880 should be the law applicable to the test herein of the validity of this title, rather than the Acts of 1876 and the Code of 1871.

*J. M. Gibson* also argued the case orally.

*L. P. Yerger*, on the same side.

"If, when a contract is made, it is valid by law of the State, *as then expounded* and *administered*, the validity cannot be impaired by any subsequent act or *decision.*" Danforth's U. S. Digest, p. 218; *Ohio Life Ins. Co. v. Debolt*, 16 Howard 416; *Havemeyer v. Iowa Co.*, 3 Wall. 294; *Olcott v. Supervisors*, 16 Wall. 678.

In this case appellant bought the land in controversy under the decision in the cases of *Witty v. Gamble*, and *Klein v. The Board of Supervisors*, in which this court had held that the excessive levy of taxes should not vitiate the deed and title. After this right had become vested in the appellant, the rule in the case of *Beck v. Allen* was announced, which tended to divest the right which the appellant had in the property in controversy.

*Coleman & Gardner*, for the appellees.

An excessive levy will vitiate a tax sale. *Beck v. Allen*, 58 Miss. 143; *Lucas v. Spencer et al.*, Miss. opinion, April term, 1883, No. 4054; *Havard et al. v. Day*, 62 Miss. 748.

The limit of taxation for 1875 was fixed at twenty dollars on the thousand. Acts 1875, p. 52.

The State tax for all purposes for that year was seven dollars and twenty-five cents per thousand, the school was two dollars, and the county levy for Leflore County was one hundred and ninety-three and one-third per cent. of the State tax, making for all purposes a tax of twenty-three dollars and a fraction, being nearly four dollars in excess of the limit.

This being identically a similar case to the case of *Lucas v. Spencer*, involving the same points throughout, appellees rest with an entire certainty upon having the decree of the lower court in this case, as in that, affirmed.

*S. R. Coleman*, of counsel for the appellees, argued the case orally.

ARNOLD, J., delivered the opinion of the court.

Under our statute on the subject, the setting aside of a decree *pro confesso*, after it has been duly taken, is not a matter of mere discre-

tion in the court.   It cannot be properly done without good cause shown.   Code, § 1889.   But § 1895 of the code authorizes bills of exception in the Chancery Court in the same manner as in the Circuit Court, whenever it may be necessary to make any matter a part of the record in a cause, and in the absence of a bill of exceptions showing upon what grounds the decree *pro confesso* was vacated, we must presume that the action of the Chancellor was right, and that the good cause required by the statute was shown.   *Bryant* v. *Rosenbaum,* 62 Miss. 191.

If it be true that appellees failed to show title to or interest in the land, it cannot avail appellant.   He challenged consideration of and objection to his title, and asked the court to approve and confirm it, and having failed to show title in himself, it is not material to his rights whether the claim of his adversaries was perfect or not. Code, § 578 ; *Meeks* v. *Whatley,* 48 Miss. 337.

If the decision in *Beck* v. *Allen,* 58 Miss. 143, is adhered to, it is decisive of the principal issue in this case.   The general Act of 1875 imposed a limitation on the amount of taxes which should be levied by boards of supervisors.   The local Act of 1872, which authorized Leflore County to issue certain bonds to Carroll County, and to levy special taxes for their payment, was not repealed or affected by the general act to which reference has been made.   The local act conferred power on the board of supervisors of Leflore County to lay special taxes for the purposes therein named in addition to, and independent of, the general limit declared by the Act of 1875.   Besides, the special taxes, under the Act of 1872, were intended as security for the bonds therein authorized, and the levy and collection of these taxes was a part of the obligation of the contract in regard to the bonds which could not be subsequently impaired by the Legislature.

The taxes levied in Leflore county for the year 1875, and for which the land in question was sold, including the special taxes for bridges and jail, and excluding the taxes for Carroll County bonds, when added to the State and school taxes, exceeded the limit fixed by the Act of 1875.   The decision in *Beck* v. *Allen, supra,* holds, that when the Legislature limits the amount of

taxes that may be levied, special taxes for jails, bridges, &c., are embraced in the restriction, and are to be counted in the amount that may be lawfully levied, notwithstanding § 16, article 12, of the Constitution, and that if the amount levied is increased by such special taxes so as to exceed the limit prescribed by the Legislature, the levy is without authority of law. The law established by *Beck* v. *Allen,* is a salutary one, and if there is an error in the construction which the majority of the court placed in that decision on § 16, article 12, of the Constitution, it is not so apparent as to enable us to assert it with confidence. The decision was rendered several years ago, after careful and deliberate consideration, and we are not willing to disturb it or to renew the discussion of a subject which was exhausted in opinions delivered by each and all the judges of the court.

A part of the taxes for which the land was sold being illegal, the sale was void and conferred no title, and the extent of appellant's right was a lien on the land, which was recognized and enforced in the court below, for the amount paid to the State for the land and for subsequent taxes, interest and damages. *Capital State Bank* v. *Lewis,* 64 Miss. 727.

A sale for taxes is a proceeding in *invitum* as to the taxpayer whose property is sold, and the doctrine pressed upon our consideration, from *Olcott* v. *The Supervisors,* 16 Wall. 678, and *Douglass* v. *Pike County,* 101 U. S. 677, and kindred cases, that if a contract when made is valid under the Constitution and laws of a State, as previously expounded by its judicial tribunals, and as they were understood at the time, no subsequent action by the Legislature or judiciary can invalidate or impair its obligation, has no application to the case at bar, where appellant is seeking, not to recover on a contract to which appellees are parties, but to deprive them of land by virtue of a tax sale.

*Affirmed.*

CAMPBELL, J., delivered the following dissent.

I dissent from the decision just announced, and adhere to the views expressed by me in *Beck* v. *Allen,* in the correctness of which

time has but confirmed me. It is apparent from the opinion just read that the decision in the case cited on the point as to which I dissented, does not commend itself as correct to either of my brethren, and yet the strange spectacle is presented of acquiescence in, and adherence to, an erroneous interpretation of the Constitution by judges who feel that it is erroneous and shrink from saying so. It is probably the only instance of a repeal of a provision of the fundamental law by the mere inclination of one judge to the view that two decisions of the court of which he was a part were wrong. This is the way the matter stands. The provision of the Constitution had been passed on and interpreted by a unanimous court in two cases. In *Beck* v. *Allen* one judge favored overruling those decisions, another opposed it, and the third saying he *inclined* " to the opinion that the former construction was erroneous, though the matter is not free from doubt," united with the judge who favored overruling the former decisions, and thus the *inclination* of this judge to doubt their correctness overruled two solemn adjudications of the court in which he participated and concurred when made, and thereby abrogated that part of the Constitution, for the view of the majority makes it mean nothing whatever, and virtually strikes it out, while mine gives effect to its plain language and purpose.

My brother Arnold says the rule announced in *Beck* v. *Allen* is a salutary one. This I deny, and confidently affirm that the people of each county who are to pay for the convenience are the better judges of the scale of expenditure to be made, and know best what they should have and are able and willing to pay for, and I stand for *decentralization* and local government as far as may be. Were the rule a salutary one, that would not justify abrogation of the Constitution by judicial enactment under pretence of interpretation. *Beck* v. *Allen* was wrongly decided, and time can never make it right. It had the disastrous effect of causing the annulment of many sales of land made on the faith of former correct decisions of this court, and to overrule it would but establish what was most erroneously undone by that unwarrantable and unmaintainable decision in which sound rules of constitutional interpretation were made to yield to supposed expediency.