### LEVINE v. KLEIN.

(Supreme Court, Appellate Term. December 22, 1909.)

1. CONTRACTS (§ 111*)—LEGALITY—AGREEMENT FOR DIVORCE.

Under Domestic Relations Law (Laws 1896, p. 220, c. 272) § 21, providing that husband and wife cannot contract to dissolve a marriage, it is sufficient to bring the agreement within the statute if by collusion or connivance there is a corrupt consent of one party to the commission of the acts of the other which furnish cause for divorce.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 515–520; Dec. Dig. § 111.*]

2. CONSPIRACY (§ 1*)—WHAT CONSTITUTES—DEFINITION.

Conspiracy is synonymous with collusion.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 2; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 2, pp. 1454–1461; vol. 8, p. 7613.]

3. CONTRACTS (§ 111*)—COLLUSIVE AGREEMENT FOR DIVORCE.

Plaintiff demanded money which she had loaned to her husband, and after signing certain papers he told her that he would pay it to defendant for her, whereupon they went to defendant,. to whom the husband said: "This is my wife's money that I borrowed from her, and I want to return it back to her. I will now try to get a divorce"—and that plaintiff would get the money from defendant; he agreeing to hold the same for a divorce. Held, that such facts did not constitute any conspiracy or connivance between the parties for a divorce that would prevent plaintiff's recovering the money from defendant.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 515–520; Dec. Dig. § 111.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. MONEY RECEIVED (§ 11*)—RECOVERY—CONDITIONS.

Where plaintiff's husband paid money, which he owed to his wife, to defendant for her, stating that he would then try to get a divorce and that plaintiff would get the money from defendant, the divorce was not a condition either precedent or subsequent on which defendant's liability to pay the money to plaintiff depended.

[Ed. Note.—For other cases, see Money Received, Dec. Dig. § 11.*]

5. MONEY RECEIVED (§ 11*)—PAYMENT—CONDITIONS—ILLEGALITY.

Where defendant received money from plaintiff's husband for her, subject to the alleged condition that the husband should procure a divorce, such condition would not indefinitely postpone defendant's duty to pay over the money, since the condition involved both an immoral and criminal act.

[Ed. Note.—For other cases, see Money Received, Cent. Dig. § 39; Dec. Dig. § 11.*]

6. MONEY RECEIVED (§ 15*)—SCOPE OF REMEDY.

Money received was a proper remedy to recover money deposited by plaintiff's husband with defendant for her in payment of a debt which he owed her.

[Ed. Note.—For other cases, see Money Received, Cent. Dig. §§ 44–50; Dec. Dig. § 15.*]

Appeal from City Court of New York, Special Term.

Action by Beckie Levine against Philip Klein. From a judgment dismissing the complaint, and from an order denying plaintiff's motion for a new trial, she appeals. Reversed, and new trial ordered.

See, also, 113 N. Y. Supp. 95.

Argued before GIEGERICH, GOFF, and LEHMAN, JJ.

Joseph Gans, for appellant.
Samuel Schlesinger, for respondent.

GOFF, J. Set forth in the complaint are these allegations of fact: (1) The depositing of $500 with the defendant for the plaintiff; (2) his acceptance of and promise to hold it for her use and benefit and pay it to her; (3) that he still holds it and refuses to pay, though demand has been made; and (4) that the money is and at all times was the property of plaintiff. These were the issues tendered, and they were met by a general denial. On the trial, plaintiff testified that, after her marriage, she loaned to her husband $500, to be paid on demand. Subsequently she made demand, and he said:

"Come to my lawyer, and if you will sign some papers I will return to you the money."

She went to the lawyer's office and made her mark on some papers. Then the husband said, "Come with me to Dr. Klein's" (the defendant, a rabbi), and when there he took the money from his pocket and gave it to defendant, saying:

"This is my wife's money that I borrowed from her, and I want to return it back to her. * * * I will now try to get a divorce, and you [the plaintiff] will get that money from Dr. Klein."

She also testified that:

"It was said that the money that was put up with Dr. Klein was to be held by him for a divorce."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Who said it does not appear. On cross-examination she testified that her husband said to the defendant:

"I borrowed this money from my wife. This is my wife's money, and now I will try to get a divorce, and you [Dr. Klein] can give the money to her"

—and, further, that the $500 was deposited with defendant about four months after her marriage. No suit for divorce was commenced. At the close of the plaintiff's case a motion was made to dismiss the complaint, on the ground that the plaintiff had failed to prove a cause of action. The theory of the defendant was that, the money having been deposited with the defendant to be held by him until the happening of a "specific event"—that is, a divorce between the plaintiff and her husband—and that event not having happened, the defendant could not be required to pay over the money. This theory was adopted by the learned trial justice, and he dismissed the complaint.

Counsel for appellant contends that the deposit of the money was based on an agreement for a divorce between husband and wife, that such agreement was illegal and void, and that defendant cannot avail himself of it; while respondent's counsel contends that the money deposited was on condition that it should only be paid to plaintiff when a divorce was obtained, and, that being an illegal consideration, the law will not aid the plaintiff to recover upon an illegal contract. Both counsel agree that there was an illegal contract, but each invokes it as destructive of the other's claim. In this both are wrong.

An illegal contract—concerning this case—is well defined by the statute. Section 21 of the domestic relations law (Laws 1896, p. 220, c. 272) provides that husband and wife cannot contract to dissolve a marriage. It is not necessary that formal or express words be used to effect such a contract. It is sufficient if, by collusion or connivance, there be a corrupt consent of one party to the commission of the acts of the other which furnish cause for divorce. Where is the evidence of an open or secret agreement between the husband and wife that one should furnish a cause for divorce or of conspiracy—for conspiracy is synonymous with collusion—or of connivance? When the husband said:

"This is my wife's money. * * * I want to return it to her. * * * I will now try to get a divorce"

—he did not say anything from which could be inferred a collusive or a conniving agreement. According to his words, their fullest import was that they gave expression to a purpose on his part; but in no sense do they give even by implication expression to a similar purpose on his wife's part. They may have been an empty boast or a threat, the result of connubial irritation, or he may have unjustifiably thought that he had sufficient cause; but the law will not spell out an unlawful agreement from such an utterance. Indeed, a husband has a right and it is his duty—save an exception—to make provision for his wife in the event of a divorce. But, whatever may have been in his mind, the essential element of agreement on the wife's part is lacking. Neither by word nor act did she assent to or promise anything. She was not in any way contributing to or benefiting by the transaction. No consideration moved from her. Practically she was helpless as she saw

the money that was rightfully hers, and to which she was concededly entitled to immediate possession, handed over to the respondent, to be held by him and given to her when her husband obtained a divorce to which she was in no sense a consenting or conniving party. Surely the law, whose object is justice, will not, so far as the wife is concerned, construct an illegal contract out of such a transaction.

Eliminating the contention of the illegality of the contract, there remains the contention of the respondent that he cannot be called upon to give up the money until the happening of the prescribed event. This event was not a condition either precedent or subsequent. It did not depend upon something being done in the way of performance. It was a contingency, which, as defined in People v. Village, etc., 39 Barb. 266, 272, is a fortuitous event, which comes without design, foresight, or expectation. The law does not regard divorce as a normal resultant of marital life. When it occurs, it should, in the eye of the law, occur without design, foresight, or expectation. It is therefore a fortuitous event, and anything that is made to depend upon it rests upon what is vague, uncertain, and indefinite. Can the holder of another person's money, in which he has no present or future interest, retain it for all time, because an event uncertain in its nature never occurs? Suppose the husband and wife lived amicably together, and divorce was never sought; could the holder resist all efforts to get that money out of his hands? Or suppose the wife died, bearing in mind that the money was her property; would her legal representative be unable to recover it? The holder's retention of the money, in either of these cases, would be a wrong, and for the wrong the law provides a remedy.

But even a more forceful reason exists why this contingency cannot be used as a shield by the respondent. It depends upon an event which can only occur by the commission of an immoral and criminal act; for the law now declares adultery a crime, and the law will not indefinitely postpone a liability already incurred, where its discharge is made contingent on the commission of crime. We are then confronted with the question: What is the remedy which the law provides? Appellant has chosen the form of action in assumpsit for money had and received. This is an equitable action, governed by equitable principles (Wright v. Butler, 6 Wend. 284, 21 Am. Dec. 323; Eddy v. Smith, 13 Wend. 488; Rathbone v. Stocking, 2 Barb. 135); and when a holder has money in his hands belonging to another, which in equity and good conscience he ought to pay over, the action will lie (Mason v. Prendergast, 120 N. Y. 536, 24 N. E. 806; Lawatsch v. Cooney, 20 App. Div. 470, 47 N. Y. Supp. 54; Villias v. Stern, 24 Misc. Rep. 380, 53 N. Y. Supp. 267).

For the purposes of this appeal the evidence of the appellant must be taken as true. It sustained all the allegations of the complaint. It showed that she had the money before her marriage; that shortly thereafter she loaned it to her husband; that he set apart a sum of money, designating it as the money belonging to his wife, and gave it to respondent to give to her. Unburdened with any question of illegal contract, or unhampered by any question of a legally impossible contingency, this evidence showed that a debtor, acknowledging his debt,

handed the money to the respondent, as his agent, to pay the debt to the creditor, and this established a good cause of action (Weston v. Brown, 158 N. Y. 360, 53 N. E. 36; Denny v. Lincoln, 5 Mass. 385), which it was error to dismiss. This conclusion is not in conflict with the opinion of this court on a previous appeal in this case.    113 N. Y. Supp. 95.   There the question was the insufficiency of proof of ownership of the money; here the testimony on that point is complete.

Judgment and order reversed, and a new trial ordered, with costs to appellant to abide the event.

GIEGERICH, J., concurs.

LEHMAN, J. (concurring). At the time that the deposit was made the plaintiff and the defendant were living together, and it was an essential part of the agreement that they should thereafter separate.   In such a case the contract is void.   Poillon v. Poillon, 49 App. Div. 341, 63 N. Y. Supp. 301; Winter v. Winter, 191 N. Y. 462, at 470, 84 N. E. 382, 16 L. R. A. (N. S.) 710.   Moreover, the acts of the parties must be given some reasonable intendment, and, if the money actually belonged to the plaintiff, then the refusal of her husband to pay it to her till after he had obtained a divorce would show an intention on his part to procure her consent to a divorce, and the courts should refuse to enforce a condition imposed evidently only for such a purpose.   The defendant herein had no interest in the fund deposited with him.   He is merely the depository.   If in fact the money belongs to the plaintiff, and is held by him under an illegal contract, or under a condition void because of its uncertainty, he should pay it over to the owner.   Under such circumstances the depositor may bring an action for money had and received.   O'Maley v. Reese, 6 Barb. 658.   The plaintiff has made out a prima facie case of ownership, and the court should not have dismissed the complaint, since the defendant has no right to hold the money.

I concur in the result for this reason.